twc v. twr 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-91-279-CV





TEXAS WATER COMMISSION, TRINITY WATER RESERVE, INC.,


d/b/a DEVERS CANAL SYSTEM AND DEVERS CANAL RICE PRODUCERS 
ASSOCIATION, INC.


 APPELLANTS


vs.





BOYT REALTY CO., J & E FARMS, INC., THREE DAILEY FARMS, INC.,


J. M. FROST, III AND FORD J. FROST, 



 APPELLEES




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT



NO. 91-1519, HONORABLE JOE DIBRELL, JUDGE PRESIDING 



 




 The Texas Water Commission ("the Commission") set rates for distribution of
water for irrigation purposes from the Devers Canal System ("the Canal"), effective for 1990 and
thereafter. The Canal is owned by Boyt Realty Company ("Boyt") and leased by Trinity Water
Reserve, Inc. ("TWR"). The Commission and Devers Canal Rice Producers Association, Inc.
("the Association") assert on appeal that the lower court erred in ruling that the Commission
lacked jurisdiction to set prospective rates for the years following 1990. TWR raises by cross-appeal multiple points of error regarding the court's affirmance of the Commission's order setting
1990 rates, claiming evidentiary, procedural, and constitutional violations. We reverse that
portion of the district court's judgment concerning post-1990 rates and affirm the remainder of
the judgment.

BACKGROUND


 In 1990, TWR began leasing the Canal, a two-hundred-mile network of waterways
flowing through Liberty, Chambers, and Jefferson Counties. TWR posted a schedule proposing
contract rates for the year 1990 averaging $97 per acre for supplying water to neighboring land. 
Because the parties could not agree on a contract price, the Association, a group of customers in
the Canal area, petitioned the Commission to review the reasonableness of TWR's proposed rates
pursuant to chapters 11 and 12 of the Water Code. (1) After hearing evidence on what expenses
should be included in the rates, the Commission ordered that for 1990 TWR should charge $79.37
for water from the main canal and $84.37 for water from a relift station, the difference reflecting
additional costs needed to pump the water from the main canal. It added a surcharge of $6.29 for
1990 to recoup expenses for the rate case and repairs made to a damaged flume. The Commission
further ordered that the base rates for 1990 would continue in effect until the parties agreed upon
a different rate or until the Commission set different rates in a future proceeding.

 TWR and Boyt filed an action in the district court challenging the Commission's
order. The trial court upheld the order regarding the 1990 rates but held the Commission's
decision to extend these rates beyond 1990 exceeded its statutory authority under chapters 11 and
12 of the Water Code.



PROSPECTIVE RATEMAKING


 Chapters 11 and 12 are the provisions of the Water Code dealing with "raw" water,
which is usually used for irrigational purposes. These chapters provide the framework governing
the rights of parties to use such water and the manner in which rates for the water's use are set.

 TWR had proposed rates for only one year, 1990. It contends that the Commission
is limited to reviewing the reasonableness of those rates and setting reasonable rates only for the
time period of the proposed contract challenged by the Association in their petition. It contends
the Commission must wait until the Association or another consumer challenges future proposed
rates before setting rates for years following the contractual period at issue in this case. TWR
notes chapters 11 and 12 of the Water Code give the Commission no express authority to set
future rates.

 To resolve this appeal, we must decide whether chapters 11 and 12 of the Water
Code authorize the Commission to set prospective rates under these facts. Other regulatory
agencies and the Commission itself, under various sections of the Water Code not in issue, (2) have
the express power to set rates beyond the immediate year during which an order takes effect. In
several instances the Commission or its predecessor agency set rates effective for multiple years,
but no party challenged this authority on appeal. See Knight v. Oldham, 210 S.W. 567 (Tex. Civ.
App.--El Paso 1919, writ ref'd); Trinity River Auth. v. Texas Water Rights Comm'n, 481 S.W.2d
192 (Tex. Civ. App.--Austin 1972, writ ref'd n.r.e.); American Rio Grande Land & Irrigation Co.
v. Karle, 237 S.W. 358 (Tex. Civ. App.--Austin 1922, writ dism'd).

 The Legislature granted the Commission broad authority in this area: "The
commission shall fix reasonable rates for the furnishing of raw or treated water for any purpose
mentioned in Chapter 11 or 12 of this code." Water Code § 12.013 (emphasis added). Further,
the Legislature impliedly intends an administrative agency to have the necessary powers to
perform its required functions. Sexton v. Mount Olivet Cemetery Ass'n, 720 S.W.2d 129, 137
(Tex. App.--Austin 1986, writ ref'd n.r.e.). 

 We stated in Trinity River that "it is only after the proprietor of an irrigation system
has set water rates that the customer may present a petition to the Commission invoking its
jurisdiction." Trinity River, 481 S.W.2d at 195. Section 11.041(a) outlines the requirements for
the filing of the customer's petition. This statute provides an avenue for a party who has no
contract for the use of raw water. The party is nonetheless entitled to the water if (1) the supplier
has not contracted to sell this water to third persons and (2) the supplier refuses to contract with
the party at a reasonable rate. Lacour v. Devers Canal Co., 319 S.W.2d 951, 953 (Tex. Civ.
App.--Beaumont 1959, writ ref'd n.r.e.). There is no dispute that the initial petition filed by the
Association complied with the requirements of section 11.041(a). The question is whether, in a
proceeding reviewing the petition, the Commission has the authority to set rates not only for the
proposed contractual period but also to make them effective prospectively beyond this period.

 Trinity River, unlike TWR suggests, does not hold that the Commission cannot set
rates beyond the term provided by the proposed contract. This court there held that rates were
subject to the Commission's jurisdiction but noted that water users must wait until their suppliers
propose rates before petitioning the Commission under section 11.041(a) of the Water Code. 
Trinity River, 481 S.W.2d at 195. We did not hold that a new petition was required to invoke the
Commission's jurisdiction for every year following the period in dispute.

 Section 11.038(b) of the Water Code provides that if two parties cannot agree on
a contract price, the supplier, if his water is not contracted to others, "shall furnish the water
necessary for these purposes at reasonable and nondiscriminatory prices." Section 11.036(b)
further provides that "if any person uses the stored or conserved water without first entering into
a contract . . . the user shall pay for the use at a rate determined by the commission to be just and
reasonable." One court of appeals has noted that



[section] 11.036 [of the Water Code] does not mandatorily require a written
contract to supply water. Nor does this section give to the supplier the power and
prerogative to demand a written contract before supplying water . . . . [I]f a
contract cannot be agreed upon, then those owning or holding a possessory right
or title to the land adjoining the canal or any of its parts, are entitled to water at
just and reasonable rates. American Rio Grande Land & Irrigation Co. v.
Mercedes Plantation Co., 208 S.W. 904 (Tex. Comm'n App. 1919, judgm't
adopted).



Trinity Water Reserve, Inc., v. Evans, 829 S.W.2d 851, 859-61 (Tex. App.--Beaumont 1992, no
writ). So long as TWR was not contractually committed to other third parties, the Association
members had a statutory right under the Water Code to use water after 1990, the period of TWR's
proposed contract, and pay reasonable rates for this water.

 Here, the Commission's order stated that the approved rates "shall continue in
effect unless and until the parties agree upon different rates or the Commission sets other rates in
a future proceeding." The rates which had been set for 1990 were established as "just and
reasonable" rates which would initially apply to post-1990 use of water. By its order, the
Commission also recognized the Association's right to use water in the future at reasonable rates,
as long as TWR has not contracted all its water to other customers. However, the Commission
made no attempt to override the negotiation-review procedures outlined in chapter 11 of the Water
Code. The parties were free to contract with each other for different rates. The Commission's
reference to a "future proceeding" recognized that the Association may file a petition under
section 11.041(a) to challenge the established rates; moreover, TWR may propose higher rates
and cause the Association to challenge these rates by a new petition. (3) The Commission had the
authority to enforce the Association's statutory right to raw water at a reasonable rate so long as
TWR made no other contractual commitments. See Water Code §§ 11.036(b), 12.013(a).

 TWR suggests that the Commission might have had authority to set future rates had
it used a different methodology to calculate post-1990 rates. This issue does not affect the
jurisdictional question, which turns on the plain words of the statute and their ordinary meaning.

 We hold that a customer may contest the rates proposed by a water supplier by
filing a petition under section 11.041(a) of the Water Code and invoking the Commission's
jurisdiction to set reasonable rates. Once its jurisdiction is invoked, the Commission may set
reasonable rates in the manner it did and is not restricted by the period of the proposed contract
in dispute. The supplier, however, is not prevented from contracting with the petitioning
customer or other customers in the future at any rate agreed upon by the contracting parties. The
Association and TWR may thus enter into a new contract for future water rates if they find the
Commission's rates unacceptable; if they cannot agree on a new price, the Commission retains
the authority to review the reasonableness of its rates under a section 11.041(a) proceeding.

 We sustain the Commission's and the Association's point of error and turn to the
multiple points of error raised on cross-appeal that attack the district court's judgment upholding
the Commission's 1990 rates.



1990 RATES


Standards of Review

 Section 19(e) of the Texas Administrative Procedure and Texas Register Act
(APTRA) (4) sets out the grounds on which a party may seek to reverse an administrative order. 
TWR claims in several points of error that portions of the order are not reasonably supported by
substantial evidence and are arbitrary and capricious, separate grounds under section 19(e) of
APTRA for judicial review. Id., (5), (6).

 In City of League City v. Texas Water Commission, 777 S.W.2d 802 (Tex.
App.--Austin 1989, no writ), this Court summarized the substantial evidence test: (1) The findings,
inferences, conclusions, and decisions of an agency are presumed to be supported by substantial
evidence, and the burden is on the party contesting the order to prove otherwise; (2) in applying
the test, the reviewing court is prohibited from substituting its judgment for that of the agency as
to the weight of the evidence of questions committed to agency discretion; (3) substantial evidence
is more than a scintilla, but the evidence in the record may preponderate against the decision of
the agency and nonetheless amount to substantial evidence; (4) the true test is not whether the
agency reached the correct conclusion, but whether some reasonable basis exists in the record for
the action taken by the agency; and (5) the agency's action will be sustained if the evidence is such
that reasonable minds could have reached the conclusion that the agency must have reached in
order to justify its action. Id. at 805 (citing Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc., 665 S.W.2d 446, 452-53 (Tex. 1984)). Where evidence in the record will support
either an affirmative or a negative finding, the agency order must be upheld. Any conflict in the
evidence must be resolved in favor of the agency's decision. Lone Star Salt Water Disposal Co.
v. Railroad Comm'n, 800 S.W.2d 924, 928 (Tex. App.--Austin 1990, no writ).

 An agency's actions are generally considered arbitrary and capricious if they are
not supported by substantial evidence. Charter-Medical, 665 S.W.2d at 454. Even if supported
by substantial evidence, though, an agency action may be arbitrary and capricious (1) when the
agency has denied the litigant due process, Lewis v. Metropolitan Savings & Loan Association,
550 S.W.2d 11, 16 (Tex. 1977); (2) when the agency has totally failed to make findings of fact
and instead based its decision on findings in another case, Railroad Commission v. Alamo Express,
308 S.W.2d 843, 846 (Tex. 1958); (3) when the agency has improperly based its decision on non-statutory criteria, Public Utility Commission v. South Plains Electric Cooperative, Inc., 635
S.W.2d 954, 957 (Tex. App.--Austin 1982, writ ref'd n.r.e.); or (4) when the agency has based
its decision on legally irrelevant factors, or failed to consider legally relevant factors. Consumers
Water, Inc. v. Public Util. Comm'n, 774 S.W.2d 719, 721 (Tex. App.--Austin 1989, no writ).



Future Rates

 In TWR's first two points of error, it attacks the Commission's order as requiring
"continuous" service "in perpetuity" to the Association. It claims this action was arbitrary and
capricious, constituted an unlawful taking, and violated its right to contract. (5) This issue has been
addressed above in our treatment of the Commission's point of error.

 The Commission's order acknowledges the Association's statutory right to receive
water from the Canal in the future at reasonable rates. The order is not arbitrary; it recognizes
the parties' right to agree to different rates in future years. The order does not interfere with
TWR's right to contract; it remains free to enter into agreements with the Association or other
customers, and at rates it may propose.

 Further, the order does not unconstitutionally deprive TWR of property without
compensation. So long as rates are reasonable, they easily meet constitutional muster. In Texas
Water Rights Commission v. Wright, 464 S.W.2d 642 (Tex. 1971), the Texas Supreme Court
upheld a statute that provided for cancellation of a water permit upon ten years of non-use. It
pointed out that surface water belongs to the state, which may issue permits for the water's
beneficial use. Id. at 647. The Commission may regulate the use of water owned by the state as
long as it does so reasonably. TWR complains that the order requires it to service the Association
in perpetuity, even though it may no longer have the statutory right to use the Canal's water in
the future. The order, however, makes clear that only qualified customers have such a right. (6)

 TWR also asserts that no substantial evidence in the record supports the
Commission's rates for post-1990 service. TWR fails to brief this point. We note that the
Commission's order merely provides an initial rate found to be reasonable for 1990 but
contemplates future negotiations and agency proceedings in later years. The Commission's order
does not foreclose further review and rate-setting for future years. We overrule TWR's first and
second points of error.



The 1986 Note

 TWR's next three points of error attack the decision of the Commission to exclude
from the rate calculation principal and interest payments on a 1986 note that Boyt owed the Trinity
River Authority (TRA), a governmental unit. TWR asserts this action was (1) not based on
substantial evidence, (2) arbitrary and capricious, (3) based on ad hoc rulemaking, (4) a
retroactive decision, and (5) precluded by a previous order of the Commission. (7) The decision
TWR complains about was based on historical facts, apparently undisputed, that require some
explanation.

 The Boyt family owned the Canal from the 1920's until 1969, when TRA
purchased it by issuing revenue bonds to the Boyts. In 1986, TRA sold the Canal to Boyt Realty,
a company consisting of many of the original bondholders, in return for the note at issue. Interest
payments on the note and the bonds were equalized, and the two debts will have the same balloon
payment at their end in 2009. The record reflects the Boyts have not canceled these reciprocal
debts, possibly due to advantageous federal taxation treatment.

 The Commission argues TWR has actually recovered the amount it seeks. The
Commission included TWR's 1990 lease of the Canal from Boyt Realty in cost of service in
Finding of Fact 33. The lease payment equalled the payments due on the note and bonds in 1990. 
TWR does not dispute this contention. It attacks other findings that prohibited it from including
principal and interest payments on the 1986 note, which it had assumed from Boyt, in cost of
service. Even if its attack had merit, TWR provides no reason why customers should in effect
have to assume double payments on the note. (8)

 The Commission did not allow TWR to include payments on the note because it
considered the debt arrangement between TRA and the Boyts to be unreasonable, in part because
it was an interested or "affiliated" transaction. TWR complains the Commission used ad hoc
rulemaking by applying section 13.002 of the Water Code, which defines an affiliate as a person
holding indirect control of the voting securities of a utility, as well as those related by blood to
such affiliates. While this definition does not directly apply to chapters 11 and 12, the
Commission employed its common usage (9) in reaching its determination in Finding of Fact 31 that
TWR's rates were unreasonably discriminatory in violation of section 11.038(b) of the Water
Code. This finding is what we must review. The affiliated nature of the debt arrangement was
merely one factor in this determination.

 The Commission feared inclusion of note payments in cost of service would pass
on the cost of Boyt's acquisition of the Canal from TRA to water customers. The Commission
was concerned with the propriety of a debt structure that continues to exist merely for the benefit
of private parties, the Boyt family members, who both own the bonds and owe the note. It
considered these arrangements to be interested transactions that are disfavored under the Water
Code. Substantial evidence, in the form of undisputed facts, supports the Commission's finding
that the payments were unreasonable.

 TWR claims the Commission may not retroactively apply the affiliated transaction
standard to void the 1969 bonds. The Commission did not "void" the bonds using such a
standard; it determined that inclusion of the 1986 note payments in 1990 cost of service was
unreasonable.

 The Commission also found the capitalized cost of the Canal had already been
recovered through depreciation allowances before 1969. Substantial evidence in the record
supports this finding. (10) The Commission's findings were not arbitrary or capricious, either; TWR
asserts no additional grounds supporting this contention.

 TWR contends that the Commission was barred by res judicata from disallowing
the payments on the 1986 note by an order it issued in 1971 regarding the value of the TRA bonds
and our decision in Trinity River. This decision merely affirmed the trial court's temporary
injunction that granted water customers relief according to the terms of the Commission's order. 
We noted the Commission had determined the value of the bonds and agreed that some of this
value was recoverable because of the publicly-owned nature of the Canal; however, the
Commission rejected the suggestion that the total value must be deemed a reasonable expense. 
Trinity River, 481 S.W.2d at 197-98. The Commission's 1971 order does not preclude its action
in the present case. First, different customers and suppliers are involved. TWR and Boyt are not
public entities; hence, the earlier reasoning does not apply. Second, the 1971 order apparently
did not include the entire cost of the bonds in cost of service. Third, the 1990 proceeding did not
involve whether it was appropriate to include the value of the bonds in cost of service in 1971;
it addressed whether TWR could include payments on the note in 1990. Finally, the debt
arrangements the Commission found unreasonable occurred in 1986, long after the first
proceeding. The order did not prevent TRA from meeting payments on the bond; it prevented
TWR from charging customers twice the amount necessary to maintain a debt arrangement that
existed for the sole benefit of the Boyts. We overrule TWR's third, fourth, and fifth points of
error.



Burden of Proof

 TWR's sixth point of error contends that the Commission erroneously placed the
burden of proof upon it in the rate proceedings. It does not cite any record references supporting
this contention. Moreover, it apparently complains that it bore the burden of production. It does
not explain how this assignment violated a statute or agency rules. We overrule this point.

 TWR's seventh and eight points of error state that either the Association failed to
meet its burden of proof or, alternatively, TWR carried its burden. The Water Code and
Commission rules do not expressly assign the burden of proof for chapter 11 proceedings, and the
record does not address the placement of this burden. TWR concedes it must show that particular
findings by the Commission violate section 19(e) of APTRA; the relevant question is whether
TWR's rates were reasonable, as required by sections 11.036 and 11.041 of the Water Code. 
TWR's points six through eight are overruled, as is its thirteenth point, which asserts cumulative
error regarding the first six points.



TWR's Expenses

 TWR's ninth and eleventh points of error assert that the Commission's decision to
disallow various expenses requested by TWR in calculating the final rate was not based on
substantial evidence and instead was arbitrary and capricious.

 This Court may only overturn an agency decision for lack of substantial evidence,
not because it may disagree with the result. League City, 777 S.W.2d at 805. When weighing
expert testimony, the Commission may accept or reject part or all of each witness's conclusions. 
It is the final judge regarding the credibility and validity of such testimony. Southern Union Gas
Co. v. Railroad Comm'n, 692 S.W.2d 137, 141-42 (Tex. App.--Austin 1985, writ ref'd n.r.e.).

 Each item disallowed by the Commission was a new expense incurred by TWR that
had not previously been included in calculating water rates for the Canal. The record contains
substantial evidence to sustain the Commission's findings.

 TWR requested the inclusion of a substantial "raw water" fee, alternatively
characterized as a "beginning balance," to sustain them during the off-season when no water
would be used for irrigation. The record does not indicate that any such fee has ever been
charged or that TWR ever paid a fee for raw water flowing from the Trinity River to the Canal. 
The Commission rejected what amounted to a request for added profits; it had already allowed
recovery of both TWR's lease payments to Boyt and an additional "management fee" to further
TWR's economic incentive to operate the canal system. (11)

 The Commission denied TWR's request for $150,000 for expenses incurred in the
course of this rate case and awarded $45,000 instead, $20,000 for consultation fees and $25,000
for attorney's fees. Bernard Erwin, the Commission's staff expert, and Jacob Pous, the
Association's expert, both testified that the amount requested by TWR was too high. The
Commission weighed conflicting expert testimony on this issue before reaching its decision.

 TWR's costs of purchasing a trackhoe and new trucks were excluded from the final
rates. Evidence as to the need for these items was disputed, and the Commission found these
expenses had not been shown to be necessary and reasonable because existing equipment or used
purchases could adequately perform the same functions. Furthermore, it found the purchases were
imprudently incurred by TWR because it was only leasing the Canal and it was unclear whether
TWR would purchase the Canal from Boyt. The testimony of Jack Pous and statements of TWR's
president, Paul Glass, supported these findings.

 TWR's request for including an employee pay raise not yet implemented also was
rejected by the Commission. The Commission thus denied a hypothetical expense not actually
incurred; furthermore, the evidence did not prove the reasonableness of such a raise.

 At the hearing before the Commission, TWR filed a supplemental request seeking
an increase in its previously requested amount for power costs. The Commission rejected this
request, citing its tardy filing and the need to normalize historical power costs. The record also
contains evidence that actual 1990 power costs were consistent with the amount included in the
rates.

 TWR's tenth point of error asserts it was denied due process when the Commission
refused to hold further hearings and cross-examination of the Commission's staff regarding two
conclusions in the Examiner's Report that were modified by the full Commission. The first item
involved recouping two costs, flume repairs and rate case expenses, by means of a one-time
surcharge in 1990 rather than including them in a future rate base. The second issue involved
reducing the fee charged to users of the relift station, from $16 to $5, over the rate charged to
users of the main canal. Both modifications came as a result of exceptions to the Examiner's
Report the Association filed and the Commission adopted.

 These two findings are supported by substantial evidence, including expert
testimony favoring the $5 differential. TWR does not dispute the amount assessed for the flume's
repair, and we have already upheld the Commission's award of the appropriate amount of
litigation and consulting expenses TWR could recover from customers for this rate case. 
Allocating specific costs to 1990 customers alone prevents TWR from recognizing a possible
windfall in future years for one-time expenses.

 TWR contends the Commission used a new methodology in calculating these
expenses and, therefore, should have held additional hearings before the examiner. In regard to
the flume repairs and rate case expenses, the Commission merely deducted these costs from rate
base and calculated a surcharge so only 1990 users would bear these one-time charges: this does
not constitute a new methodology. When determining the excess amount chargeable to users of
the relift station, the Commission was faced with widely varying calculations by the examiner and
parties. (12) Both the Commission's staff and the Association eventually urged continuation of the
historical differential of $5 which had previously been recognized in water rates. TWR could
hardly have been surprised by the Commission's adoption of the same differential that had always
been assessed. Again, this analysis does not constitute a new methodology. Further, Pous's
calculations provided evidentiary support for the $5 figure. 

 The evidentiary support for these two findings distinguishes this case from a
decision of this court cited by TWR, Railroad Commission v. Lone Star Gas Co., 611 S.W.2d 908
(Tex. Civ. App.--Austin 1981, writ ref'd n.r.e.). This court held there that the aggrieved party
had been denied appropriate procedural safeguards when the Commission had not permitted a
party to respond to the use of a methodology unsupported by evidence in the record. Id. at 910.

 TWR's argument would require the Commission to hold another hearing before the
examiner when it sustains a party's exceptions to the Examiner's Report. The Commission is not
bound by this report, and it is the Commission's findings which are subject to review. TWR had
a chance to respond to the Association's exceptions in writing and also argued against their
adoption in the open hearing before the Commission.

 TWR cites section 13 of APTRA as allowing parties an unlimited right to cross-examination and multiple hearings. We do not interpret the statute as mandating such
procedures. (13) The expenses at issue had been disputed in the hearing before the examiner and
substantial time had passed before the open hearing with the Commission was held. TWR had
ample opportunity to present its evidence.

 We hold that substantial evidence supports the Commission's findings disallowing
the expenses discussed above. We further hold these findings were not arbitrary and capricious,
and the Commission did not deny TWR due process. We overrule TWR's ninth, tenth, and
eleventh points of error.

 TWR's twelfth point asserts the Commission's denial of requested expenses
unlawfully deprived TWR of its property. We have found that the evidence does not support
TWR's claims these expenses were reasonably incurred. Rates are nonconfiscatory as long as
they establish a reasonable return for the regulated party, and the state may exclude "dishonest
or obviously wasteful or imprudent expenditures." Missouri ex rel. Southwestern Bell Tel. Co.
v. Public Serv. Comm'n, 262 U.S. 276, 289 n.1 (1923) (Brandeis, J., concurring); see also
Railroad Comm'n v. Houston Natural Gas Corp., 289 S.W.2d 559, 573 (Tex. 1956). Further,
the state has wide latitude in the regulation of surface water. See n.7, supra. We overrule this
point.



DISPOSITION OF CAUSE


 Having sustained the Commission's and Association's point of error and overruled
TWR's points on cross-appeal, we must decide the disposition of this cause. The district court
stated in its conclusions of law that it was reserving the issue of whether post-1990 rates were
supported by adequate findings of fact and substantial evidence. Ordinarily, we would remand
the cause so the lower court could resolve this unanswered issue. In this particular instance,
however, such an action would be fruitless. The district court has affirmed the 1990 rate base,
which is identical to future rates, as well as the 1990 surcharge. The evidence which the district
found supported the Commission's 1990 rates also supports the Commission's decision that such
rates would apply in the future, as long as the parties could adjust these rates if circumstances
justifying the 1990 rates changed. We have construed the Commission's order as allowing the
parties to freely negotiate for different rates or litigate the issue of reasonable post-1990 rates
before the Commission in the future. We need not remand the cause to the district court to review
evidence it has already found sufficient.

 Accordingly, we reverse that portion of the district court's judgment that reverses
the portion of the Commission's order setting rates beyond 1990 and render judgment that this
portion of the Commission's order be affirmed. We affirm the remainder of the district court's
judgment. (14)



 Marilyn Aboussie, Justice

[Before Chief Justice Carroll, Justices Aboussie and B. A. Smith]

Reversed and Rendered in Part; Affirmed in Part 

Filed: June 23, 1993

[Publish]
1.   All further references to the Water Code are from Tex. Water Code Ann. (West
1988).
2.   Section 13, for example, explicitly allows the Commission to set prospective rates for
the sale of potable water. § 13.186.
3.   We interpret the Commission's order to allow TWR to propose new contractual
rates, and thus potentially initiate a new proceeding, in order to prevent the order from
establishing, in effect, indefinite maximum rates which TWR may charge. Nothing in the
Water Code suggests the Commission has the power to mandate long-term rates on its
own initiative. Further, TWR notes that raw water market prices are especially subject
to change from year to year. This fact, which no party disputes, persuades us that the
Legislature did not impliedly grant the Commission such power, either.


 The Commission suggests TWR also has the right to petition the Commission for
review of post-1990 rates. Section 11.041(a) of the Water Code details a customer's right
of petition; the Code does not contain an express analogous right for the seller. Of course, the
seller actually controls the process by proposing new rates. In any event, we need not decide
the matter in this proceeding. 
4.   All further references to APTRA are from Tex. Rev. Civ. Stat. Ann. art. 6252-13a
(West Supp. 1993). 
5.   TWR also asserts the district court erred in failing to hold the Commission had no
jurisdiction to set future rates. As the district court actually found in TWR's favor, we
overrule this contention; moreover, we have already addressed this issue in regard to the
Commission's appeal.
6.   Conclusion of Law 8 states: 


The owners and/or lessee (if applicable) of the canal system are obligated
under 11.036-11.041 of the Texas Water Code to provide continuing service
under terms and conditions that are just, reasonable and nondiscriminatory
to members of the [Association] and other customer farmers who meet the
qualifications of Section 11.038 of the Texas Water Code.


 The order then commands: "The owners and/or lessee (if applicable) of the canal
system shall supply water through the Devers Canal System on a continuing basis to
customer irrigators." It does not order TWR to supply the Association if its members no
longer qualify under the Water Code. 
7.   TWR also asserts, but does not brief, that the action unlawfully deprived it of its
property without compensation. As the state is broadly empowered to license the use of
surface water, we do not see how setting conditions for this use in the form of ratemaking
constitutes such a taking. See Wright, 464 S.W.2d at 647. 
8.   Since TWR recovered its lease payments, which made payments on the note current,
it apparently wishes customers to pay the cost of purchasing an already-built canal from
Boyt. TWR does not suggest why this would be a reasonable expense.
9.   [9]  The idea of an affiliate is found in many regulatory acts. See Public Utility Regulatory
Act, Tex. Rev. Civ. Stat. Ann. art. 1446c, § 3(i) (West Supp. 1993); see also Gas Utility
Regulatory Act, Tex. Rev. Civ. Stat. Ann. art. 1446e, § 1.03(8) (West Supp. 1993).
10.   The testimony of Association's expert witness, Jack Pous, supports the
Commission's finding that all invested capital costs had previously been recovered. TWR
complains that exhibits Pous used were improperly admitted. TWR does not, however,
point out any affirmative evidence of such capital costs and that these costs were
reasonably incurred.
11.   The Commission used a cash flow methodology, which allows recovery of
reasonable expenses plus a reasonable amount of profit. Recovery of the lease and
management expenses totalled $220,000 in profits. The Commission supported this figure
by calculating that if it used a utility basis methodology, which allows a reasonable rate of
return on invested capital plus costs of service, TWR would receive $111,000 in
depreciation recovery plus a 10% return on $1,071,000, which would total $218,000. See
Finding of Fact 36. TWR does not dispute this finding.
12.   TWR requested a $52 differential. The Association calculated a $3.81-$5 excess
charge. The Examiner's Report suggested $16.18.
13.   Section 13(a) of APTRA provides, "In a contested case, all parties must be
afforded an opportunity for hearing after reasonable notice." Section 13(d) provides,
"Opportunity must be afforded all parties to respond and present evidence and argument
on all issues involved."
14. The Court originally rendered judgment and handed down an opinion in this cause on
April 7, 1993. At that time the Court was unaware that on March 31, 1993, TWR filed a
petition for bankruptcy under chapter 11 of the Bankruptcy Code. In re Trinity Water
Reserve, Inc., No. 93-10408-S-11 (Bankr. E.D. Tex.). The April 7th opinion and judgment
were nullities because of the existence of the automatic stay in bankruptcy. See 11 U.S.C. §
362 (1988). The bankruptcy court has now lifted the automatic stay to allow this Court to
render judgment and hand down its opinion, and we do so today. See Trinity Water Reserve,
Inc. v. Devers Canal Rice Producers Ass'n (In re Trinity Water Reserve, Inc., No.
93-10408-S-11) No. A-93-1032 (Bankr. E.D. Tex. June 11, 1993).