# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 20, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2018-SC-000175-MR

FINAL

DATE APPELLANT

3/12/20
a. Hutcheson

DAVID R. FINLEY      APPELLANT

V.

ON APPEAL FROM HART CIRCUIT COURT
HONORABLE CHARLES C. SIMMS, JUDGE
NO. 17-CR-00059

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## REVERSING AND VACATING IN PART, AFFIRMING

## IN PART, AND REMANDING

A Hart County Grand jury indicted Appellant, David R. Finley, for murder, attempted murder, tampering with physical evidence, and for being a first-degree persistent felony offender (PFO). At trial, the jury found Finley guilty of second-degree manslaughter, first-degree wanton endangerment, tampering with physical evidence, and being a first-degree PFO. The trial court sentenced him to a total of twenty years' imprisonment in accordance with the jury's recommendation.[1] Finley appeals to this Court as a matter of right, Ky. Const. §110(2)(b).

---

[1] With the PFO enhancement, the jury recommended Finley be sentenced to twenty years' imprisonment each for manslaughter, wanton endangerment, and tampering with physical evidence, with all sentences to be served concurrently for a total of twenty years.

Finley raises three issues on appeal, alleging the trial court erred by: (1) failing to grant a directed verdict for tampering with physical evidence, (2) improperly providing the jury with an instruction for first-degree wanton endangerment, and (3) admitting improper evidence in the penalty phase. After careful review, we reverse and vacate in part and affirm in part.

## I. BACKGROUND

On the evening in question, Finley and Jennifer Hendricks traveled together in an automobile owned by Finley's wife. Following an accident which left the car in a ditch, Hendricks called Scott Bryant, a friend and auto mechanic, for help. Bryant drove to assist Hendricks. Bryant had never met Finley, who had been drinking most of the day.

The vehicle was inoperable, required a tow, and was left on the side of the road. Bryant returned to his trailer with Hendricks and Finley. The three shared a marijuana cigarette and Finley and Hendricks drank moonshine. Trouble began when Finley produced a .380 Taurus semi-automatic handgun and handed it to Hendricks. Bryant told Finley and Hendricks he did not want guns in his trailer.

According to Bryant, Finley and Hendricks briefly went outside, and when the two returned, Finley's demeanor toward Bryant had changed. Finley, now armed with a 9mm handgun, confronted Bryant, asking him why he had mistreated his ex. Bryant indicated he did not believe he had done so and did not think he needed to answer the question. At that point, Finley stood up, approached Bryant, and swung the gun in his right hand behind Bryant.

Finley fired the weapon as Bryant turned toward the gun. The bullet passed through the mattress behind where Bryant sat. After Hendricks yelled at Finley and jumped on him, Bryant secured the 9mm from Finley, who removed the magazine and the round from the chamber. Bryant also saw the .380 handgun sticking out of the waistband of Hendricks's pants and attempted to secure that weapon as well. While he was unsuccessful in getting possession of that firearm, the magazine release button had been pressed during the struggle and Bryant removed the magazine, leaving that gun with a single round in the chamber.

Finley told Bryant that he would not leave the trailer without the 9mm, and Bryant returned the unloaded gun but kept the magazine. With Bryant in control of both magazines and the bullet from the chamber of the 9mm, Hendricks and Finley left the trailer with both handguns (the now-empty 9mm and the .380 with a single bullet in the chamber). Shortly after leaving, Hendricks returned asking for the 9mm magazine, but Bryant refused to return it. Bryant closed the door after speaking to Hendricks. Ten to fifteen minutes later, he heard a loud bang outside the trailer, as if someone had slammed his hand against the side. When Bryant opened his door, he saw that Hendricks lay dead in front of the trailer.

During Hendricks's autopsy, the medical examiner retrieved a .380 slug from the back of her brain. The medical examiner ruled out suicide as the cause of death, estimating the gun was fired from a distance of at least three feet from the entry wound. Therefore, the medical examiner ruled her death a

2

homicide. Despite extensive police search efforts, officers never recovered the .380 handgun that fired the fatal shot. Without the gun, experts for the Commonwealth and Finley were unable to determine the shooter's exact location in relation to Hendricks when the shot was fired.

Finley's whereabouts and actions during the three hours following the shooting are unknown. Around midnight, Joanna Finley, Finley's wife, picked him up at a closed auto garage near (but not visible from) Bryant's trailer. Finley and Joanna returned to their residence without the Taurus .380. When state troopers arrested Finley at home, he broke a trooper's hand resisting arrest and fighting officers' efforts to confiscate the unloaded 9mm handgun.

A Hart County Grand jury indicted Finley, for murder, attempted murder, tampering with physical evidence, and for being a first-degree persistent felony offender (PFO) and the case went to trial. After closing its case at trial, the Commonwealth moved to amend the indictment by adding wanton language to the murder count in order to conform the charges to the evidence. The trial court granted that motion.

When ruling on instructions, the trial court accepted the Commonwealth's request to instruct on first-degree wanton endangerment as a lesser-included offense of attempted murder. The wanton endangerment instruction was given to the jury over defense objection.

Finley was convicted of second-degree manslaughter, first-degree wanton endangerment, and tampering with physical evidence. Following the verdicts, the trial court conducted a combined PFO/penalty phase. During this phase,

the Commonwealth introduced felony convictions from five judgments. Three of the judgments qualified for first-degree PFO consideration and two judgments, while admissible as part of Finley's criminal history, did not qualify for PFO consideration.

One of the non-qualifying PFO felony judgments concerned a conviction for third-degree assault for Finley breaking the state trooper's hand. The other non-qualifying felony judgment involved a domestic violence incident where Finley was convicted of assaulting Joanna, taking her vehicle, and using her credit cards. An arrest warrant for the domestic violence incident was pending when Finley was arrested for shooting Hendricks.

The jury heard about the trooper's broken hand during the Commonwealth's case in chief. The trooper was not recalled for further testimony during the penalty phase. The jury had not heard the underlying factual details about the domestic violence convictions when Joanna testified during the Commonwealth's case-in-chief. The Commonwealth recalled Joanna to answer questions about the domestic violence incident. During Joanna's testimony, the Commonwealth introduced multiple pictures of her injuries including two close-up pictures of swollen, black eyes. After finding Finley was a first-degree PFO, the jury recommended the maximum possible sentence of twenty years' imprisonment for each underlying offense, but recommended those sentences be served concurrently.

Further information will be developed as needed.

4

## II. ANALYSIS

### A. Directed Verdict

Finley seeks reversal of his conviction for tampering with physical evidence, claiming the trial court erred when it failed to grant his motion for a directed verdict on the charge. Kentucky State Police detectives failed to find the missing Taurus .380 handgun and the Commonwealth did not offer any direct proof Finley concealed or destroyed the gun. Finley argues this error merits reversal of his conviction for tampering with physical evidence. We agree.

> KRS 524.100 provides:
>
> A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:
>
> (a) Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding; . . . .

Finley claims the Commonwealth's proof consisted of the police being unable to locate the missing gun despite searching a vast area, Finley's home, and his wife's car. He asserts that the Commonwealth merely proving that he left the scene with the .380 Taurus is insufficient to survive a motion for a directed verdict on the tampering charge. Finley argues the Commonwealth must have presented some additional evidence showing that he intended to conceal the gun to survive his motion for a directed verdict on the charge.

The trial court overruled the directed verdict motion noting Finley left the scene and his whereabouts and actions were unknown for three hours. In his

5

brief, Finley claims that neither the fact that he left the scene nor the period of time for which he was unaccounted prove he concealed the gun. According to Finley, as far as the proof showed, he may have accidently dropped the gun.

"On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). "The trial court must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion, and a directed verdict should not be given unless the evidence is insufficient to sustain a conviction." *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983).

Finley correctly asserts that our case law makes clear that merely leaving a crime scene in possession of evidence does not complete the crime of tampering with physical evidence. "We note, tampering does not arise by the mere act of hiding property on one's person to avoid detection of shoplifting." *Commonwealth v. Henderson*, 85 S.W.3d 618, 620 (Ky. 2002). Likewise, an appellant's walking away from the scene of a crime with a gun is not enough to support a tampering charge without evidence of some additional act demonstrating an intent to conceal. *Mullins v. Commonwealth*, 350 S.W.3d 434, 442 (Ky. 2011).

Finley cites *McAtee v. Commonwealth*, 413 S.W.3d 608 (Ky. 2013), a case where the defendant walked away from the scene of a crime with a gun which was never found. In that case, this Court, looked for evidence of an additional

6

act relating to the gun but found none in the record. "Without such evidence it was unreasonable for the jury to find the Appellant guilty of tampering with physical evidence." *Id.* at 617. The same is true here. There is no evidence of an additional act relating to the gun.

Here, the record contained proof that Finley had a Taurus .380 (Joanna's gun) in his possession prior to arriving at Bryant's trailer. Before the car wreck, Finley and Hendricks sent Hendricks's estranged husband a photo of Finley holding a Taurus .380 and a 9mm. Bryant testified that after removing the ammunition from the 9mm, he attempted to retrieve the Taurus .380 from the waistband of Hendricks's pants, but only partially succeeded when he obtained the magazine.

Bryant testified Hendricks and Finley left his trailer with both guns—the .380 with one round of live ammunition in the chamber and the empty 9mm. After telling Hendricks she could not have the 9mm magazine, Bryant closed the trailer door and heard a bang outside. Hendricks died from a .380 bullet which entered her forehead and lodged at the back of her brain. An empty .380 shell casing was found close to the trailer and near Hendricks's body, which was near Bryant's doorstep. The medical examiner determined her death could not have been a suicide. Two firearms experts, one for the defense and one for the Commonwealth, concurred with the medical examiner's finding that the fatal shot was fired at least three feet from Hendricks.

Finley left the trailer with Hendricks and two handguns. No one other than Finley was outside with Hendricks when she was shot. Finley fled the

7

trailer on foot and when Joanna found him three hours later at the closed auto garage with the 9mm, he did not have her .380 Taurus. Joanna testified Finley became agitated when she asked him what happened that evening and when she asked him about the .380. In summary, the .380 disappeared while the gun was in Finley's possession and during the three hours no one observed what he was doing.

The police conducted multiple extensive searches of the area around the trailer. The night Hendricks was shot, a KSP detective borrowed a spotlight and had two firetrucks use massive floodlights to illuminate the field closest to Bryant's trailer. Finley was seen walking there when he first left Bryant's trailer before Hendricks was shot. Using a grid search method to avoid overlooking anything, the detective did not find the gun. Multiple state police detectives returned the next day after sunup to continue the search. The detectives searched the initial field a second time, two additional fields, a tree line separating the fields from railroad tracks, the railroad tracks, and the auto garage where Joanna told them she picked up Finley following the shooting. KSP detectives also searched Finley's residence and Joanna's car. All search efforts failed to locate the Taurus .380 handgun.

In *McAtee*, we noted no evidence in the record of a separate act of concealment despite the Commonwealth's insistence that it must have occurred. "We are unable to deduce any such evidence, and the Commonwealth points us to none." *Id.* at 617.

8

Finley was outside the trailer with Hendricks when she was shot. It is reasonable to infer Finley fled with the .380 Taurus given the fact that police searched the area and did not recover the weapon. However, there is no evidence of Finley's intention to conceal the gun to prevent its use in whatever official proceeding would follow Hendrick's violent death in accordance with KRS 524.100.

No witnesses testified as to Finley's whereabouts during the three hours between Hendricks's murder and his wife picking him up. Finley may have gone well outside the boundaries of the police search. As there is no evidence as to where he went or what he may have done with the gun, it is entirely possible Finley (who was by all accounts intoxicated) may have inadvertently dropped the weapon at some point during that three-hour period.

As noted above, a trial court should not be reversed unless it is clearly unreasonable for the jury to find guilt. *Benham*, 816 S.W.2d at 187. Again, we note that "[t]he trial court must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion, and a directed verdict should not be given unless the evidence is insufficient to sustain a conviction." *Sawhill*, 660 S.W.2d at 5. Here, the evidence was insufficient for the trial court to permit the jury to consider the offense of tampering with physical evidence. The record is devoid of any evidence that Finley concealed the .380 "with intent to impair its verity or availability in the official proceeding." KRS 524.100

After careful review of the record, we hold the trial court erred in denying Finley's motion for a directed verdict as to tampering with physical evidence.

9

Therefore, we reverse Finley's conviction on that charge and vacate the corresponding sentence.

## B. First-degree Wanton Endangerment

Finley asserts the trial court erred when it instructed the jury on wanton endangerment as a lesser-included offense of attempted murder. The different mental states required for attempted murder and wanton endangerment are the focus of his argument. After careful review, we hold the trial court did not abuse its discretion in instructing the jury.

Near the close of the defense's case, the trial court and the parties discussed possible jury instructions, and the Commonwealth requested a first-degree wanton endangerment instruction as a lesser-included offense of attempted murder related to Finley's firing of a shot into the mattress behind Bryant. Earlier, the trial court had indicated first-degree wanton endangerment was not a lesser-included offense of attempted murder because of the differing mental states. However, during the discussion about jury instructions, the trial court noted evidence of Finley's intoxication in support of the first-degree wanton endangerment instruction. Finley objected to the instruction.

Finley seeks de novo review of this claim of error and the Commonwealth asserts the appropriate standard is abuse of discretion. We agree with the Commonwealth that we review for this claimed error for an abuse of discretion. *Conyers v. Commonwealth*, 530 S.W.3d 413, 424 (Ky. 2017) ("Where, as here, such a claim has been properly preserved, *Martin v. Commonwealth*, 409

10

S.W.3d 340 (Ky. 2013), and where the trial court's decision is based on its assessment of the evidence, we review that claim for an abuse of discretion."). "A trial court abuses its discretion when its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.*

A "trial court is required to instruct a jury on lesser-included offenses when it is so requested and it is justified by the evidence." *Wombles v. Commonwealth*, 831 S.W.2d 172, 175 (Ky. 1992). An instruction on a lesser-included offense is required only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense. *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998).

Reviewing the statutory language relevant to Finley's claim is critical in making this determination. We begin with the murder statute, KRS 507.020, which provides, in pertinent part: "(1) A person is guilty of murder when: (a) With intent to cause the death of another person, he causes the death of such person or of a third person. . . ." Attempt is set out in KRS 506.010 and includes the following language:

> (1) A person is guilty of criminal attempt to commit a crime when, acting with the kind of culpability otherwise required for commission of the crime, he:
>
> . . . .
>
> > (b) Intentionally does or omits to do anything which, under the circumstances as he believes them to be, is a substantial step in a course of conduct planned to culminate in his commission of the crime.

11

First-degree wanton endangerment is set out in KRS 508.060, which reads: "(1) A person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." Based on these statutory definitions, Finley's firing of the gun behind Bryant into the mattress on which he sat could be either attempted murder or wanton endangerment—depending upon the mental state the jury ascribed to Finley.

Analyzing the language of the criminal attempt statute reveals critical differences in mental states. While a lesser-included offense may have a different mental state than the greater crime, we have held, "[a]n instruction on a lesser included offense requiring a different mental state from the primary offense is unwarranted unless there is evidence supporting the existence of both mental states." *Taylor v. Commonwealth*, 995 S.W.2d 355, 362 (Ky. 1999) (citing *Commonwealth v. Chandler*, 722 S.W.2d 899 (Ky. 1987); *Butler v. Commonwealth*, 560 S.W.2d 814 (Ky. 1978); *Pilon v. Commonwealth*, 544 S.W.2d 228 (Ky. 1976)).

Furthermore, KRS 505.020(2) states:

A defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when:

> (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

12

(b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

(c) It differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission; or

(d) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest suffices to establish its commission.

Here, the Commonwealth presented evidence sufficient to establish the commission of the offenses charged—the greater (intentional) offense and the lesser (wanton) offense. While collecting evidence from the trailer, state police recovered a partial steel bullet jacket, later determined to match the 9mm ammunition in the magazine of that gun (which was in Finley's possession at the time of his arrest). The steel jacket was found underneath the mattress where Bryant was sitting when Finley fired the gun. Police determined the bullet hole trajectory in the mattress was downward and angled toward the wall. Bryant, at different times in his statement to the police, described the gun barrel direction as pointed at him, away from him, and toward the wall. Bryant, on the witness stand, acknowledged he did not get a good look at which way the gun barrel was pointed. With the 9mm behind him and while engaged in a struggle to gain control of the weapon, Bryant was not able to clearly state the direction in which the gun was pointed.

There was also evidence of Finley's extensive consumption of alcohol both prior to arriving at Bryant's trailer and after he arrived. Furthermore, Bryant testified that he, Finley, and Hendricks smoked marijuana after arriving

13

at Bryant's trailer. The trial court correctly determined a fact question existed for the jury to decide for which offense—if any—Finley was guilty. Instructions for attempted murder, first-degree wanton endangerment, second-degree wanton endangerment, and menacing were given by the trial court to aid the jury's deliberations.

After reviewing applicable statutes, caselaw, and the evidence the trial court had before it, we hold the trial court did not abuse its discretion in overruling Finley's objection and providing the jury with a first degree-wanton endangerment instruction.

## C. Improper Penalty-Phase Evidence

Finley begins the third and final issue in his brief with this heading: "The Commonwealth erred by showing pictures of Appellant's wife that culminated in a conviction during sentencing in the instant case." Following this heading, Finley's argument focuses on Joanna's penalty-phase testimony concerning Finley's conviction from a domestic violence case and admission of graphic photographs showing her injuries. Finley's brief clarifies, "[o]n appeal, Appellant argues that these multiple errors—including showing the jury any pictures and offering the detailed testimony from Joanna—is clearly a manifest injustice that should mandate a new sentencing hearing."

Finley concedes the claimed penalty phase error is unpreserved, but requests review under RCr 10.26 which reads in part: "a palpable error which affects the substantial rights of a party may be considered by an appellate court on appeal, even though insufficiently raised or preserved for review, and

14

appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." Manifest injustice occurs when, "the error so seriously affect[s] the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'" *Beard v. Commonwealth*, 581 S.W.3d 537, 544–45 (Ky. 2019).

After careful review, we find the admission of the photographs and Joanna's testimony error, but we further find no manifest injustice resulted from the error.

Finley claims improper and excessive evidence regarding a domestic violence case underlying one of his felony convictions was presented during the penalty phase. We begin our review by looking to KRS 532.055(2)(a)(2). This portion of the "Truth in Sentencing Statute" allows the Commonwealth to offer evidence relevant to sentencing including the nature of prior offenses for which a person was convicted. When construing this statute in 2011, this Court laid out clear direction on how to procced with such evidence. We said:

> Therefore, we hold today that the evidence of prior convictions is limited to conveying to the jury the elements of the crimes previously committed. We suggest this be done either by a reading of the instruction of such crime from an acceptable form book or directly from the Kentucky Revised Statute itself. Said recitation for the jury's benefit, we feel, is best left to the judge. The description of the elements of the prior offense may need to be, customized to fit the particulars of the crime, i.e., the burglary was of a building as opposed to a dwelling. The trial court should avoid identifiers, such as naming of victims, which might trigger memories of jurors who may—especially in rural areas—have prior knowledge about the crimes.

*Mullikan v. Commonwealth*, 341 S.W.3d 99, 109 (Ky. 2011).

15

There can be no doubt *Mullikan's* directives were not followed in this case. The Commonwealth not only revisited the underlying facts of the domestic violence case, it elicited details of Joanna's injuries buttressed by graphic photographs. This is the excessive and prejudicial evidence *Mullikan* prohibited and sought to avoid. Joanna should not have been called to the witness stand in the penalty phase and questioned about the prior domestic violence case. Multiple photographs, including two showing her blackened and swollen eyes, should not have been introduced into evidence.

Our review does not end with that determination, however, as we are tasked with determining whether this error was palpable. Here, other relevant and admissible evidence was presented at the sentencing phase fully supporting the jury's sentencing recommendation. The resulting sentence recommendation is neither shocking nor intolerable.

As we proceed, we first note this is not a case for harmless error analysis. The trial court in this case did not rule on evidence or grant or deny an objection. As we previously made clear, the distinction between harmless error and palpable error, is significant:

> A final point should be addressed. In the future, reviewing courts should endeavor to avoid mixing the concepts of palpable error and harmless error. One is not the opposite of the other. A claim of palpable error presupposes a lack of preservation and such claims are held to the standard described herein. Harmless error, on the other hand, presupposes preservation and an erroneous trial court ruling, but nevertheless permits a reviewing court to disregard it as non-prejudicial.

*Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006)

16

The Commonwealth presented evidence Finley was released after serving a prison sentence a few weeks before the shooting. Finley's Department of Corrections' record revealed his parole had been revoked and—among many problems—he absconded supervision. Released from prison February 1, Finley assaulted Joanna ten days later. Six weeks after his release, Finley shot and killed Hendricks. During his arrest for killing Hendricks (while still illegally armed with a handgun) Finley broke a state trooper's hand.

Finley had been avoiding arrest on a warrant from Joanna's domestic violence case and hollowed out the inside of a couch as a hiding place. State troopers found Finley, still armed with the 9mm, hiding in the hollowed-out space when he was arrested for killing Hendricks. This was not the only time Finley, a convicted felon, possessed handguns in violation of the prohibition against such possession by a convicted felon. In summary, during the six weeks following his release from prison, Finley engaged in multiple acts of violence, hid from law enforcement, and used handguns he was not legally allowed to possess.

As its proof of Finley's first-degree PFO status, the Commonwealth introduced three prior felony judgments of conviction. The oldest conviction was for first-degree wanton endangerment and proven with a 1997 Barren County judgment that had sentenced Finley to two years' imprisonment on the felony. Finley had also been convicted of four misdemeanors, the sentences for which were set to run concurrently with the sentence for the felony charge. The Commonwealth then introduced a 2008 Hardin County judgment in which

17

Finley had been sentenced to ten years' imprisonment for manufacturing methamphetamine along with three misdemeanor convictions. A 2012 Jefferson County judgment was the third conviction qualifying for PFO consideration. That judgment contained convictions for first-degree wanton endangerment, unlawful imprisonment, and fourth-degree assault. Finley served five-year concurrent sentences for those crimes.

Two judgments the Commonwealth presented showed convictions that were final before trial, but not qualifying for PFO consideration. The judgments included the case from Hardin County involving the state trooper's broken hand and the case involving domestic violence for assaulting Joanna. The Hardin County judgment confirmed convictions for first-degree wanton endangerment, third-degree assault, and convicted felon in possession of a handgun. Sentences imposed in that case totaled ten years. The judgment involving Joanna was for unlawful imprisonment, fraudulent use of a credit card, theft of an automobile, and fourth-degree assault, with sentences totaling five years' imprisonment. Sentences from these two cases were ordered served consecutive to each other.

In addition to the five circuit court judgments, a probation and parole officer testified about numerous violations Finley committed while under supervision including failed drug tests, missed supervision appointments, and absconding. In summary, Finley's lengthy criminal history of felony convictions dating back twenty years prior to the present case, his history of unsuccessful supervision during earlier periods of release from custody, and

18

six weeks of violent drug- and alcohol-fueled criminal behavior following his release from prison culminating in Hendricks's death supports a conclusion that the jury's recommended sentences would not change absent Joanna's testimony and the photographs. This situation bears more than a passing resemblance to what we found in *Miller v. Commonwealth*. There we said:

> The jury's recommended penalty was more likely the result of Miller's multiple felony convictions, his repeated parole violations, his continuous return to illegal activity, and the information concerning parole eligibility than it was the result of hearing Miller himself admit he sold drugs on more than just the six occasions for which he was convicted. Considering the entirety of the proceedings, we find there was no error so "shocking or jurisprudentially intolerable" as to seriously threaten the "fairness, integrity or public reputation of judicial proceedings." *Martin,* 207 S.W.3d at 4.

*Miller v. Commonwealth,* 394 S.W.3d 402, 408 (Ky. 2011).

Finley's sentence recommendation is consistent with the evidence presented at the penalty phase and is appropriate in light of his conduct. There is no manifest injustice in this sentence recommendation.

After careful consideration, we hold that the trial court did not commit palpable error in allowing the admission of improper evidence during the penalty phase of Finley's trial.

## III. CONCLUSION

While we affirm the trial court as to Finley's remaining convictions and sentences, we reverse Finley's conviction on the tampering with physical evidence charge for the reasons stated above. Therefore, we vacate the

19

corresponding sentence on that charge and remand this matter to the trial court for the entry of a new judgment in accordance with this opinion.

All sitting. Minton, C.J.; Keller, Lambert, Nickell, VanMeter, Wright, JJ., concur. Hughes, J., concurs in result only without separate opinion.

COUNSEL FOR APPELLANT:

Julia Karol Pearson
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

James Daryl Havey
Assistant Attorney General